IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTY SIMINGTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 13-178J |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 29th day of September, 2014, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 6) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications[1] for benefits on June 9, 2010, alleging a disability onset date of May 25, 2007, due to severe abdominal pain, depression, anxiety, post-traumatic stress disorder, permanent shoulder injury with restrictions, dysfunctional uterine bleeding and gallbladder issues. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on January 11, 2011, at which plaintiff, represented by counsel, appeared and testified. On April 19, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On June 19, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 37 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has at least a high school education, and has past relevant work experience as a cashier/deli worker, order picker and working supervisor. Although the ALJ found that plaintiff worked for almost a year after her alleged onset date with earnings sufficient to constitute substantial gainful activity, the ALJ nevertheless proceeded through the rest of the sequential evaluation process.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that the medical evidence establishes that plaintiff suffers from a number of severe physical impairments[2] as well as several mental impairments including major depressive disorder, panic disorder, post-traumatic stress disorder and anxiety. (R. 13). However, the ALJ determined

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and had acquired sufficient coverage to remain insured through June 30, 2013.

[2] These severe physical impairments include residual effects of a subacromial decompression and distal excision, degenerative joint disease of the knees, hypothyroidism, endometriosis, polycystic ovarian disease, the residual effects of a cholecystectomy with complication of hematoma, history of plantar fasciitis, bilateral median plantar sensory neuropathy and morbid obesity.

AO 72
(Rev. 8/82)

that those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform sedentary work with numerous restrictions to accommodate the limiting effects of her physical and mental impairments.[3] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including table worker, addresser/mail sorter and electronics assembler. Relying on the vocational expert's testimony, the ALJ found that although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

---

[3] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work "except she must avoid overhead reaching with the non-dominant left upper extremity; is limited to occasionally stooping, kneeling, crouching and climbing ramps and stairs; must avoid balancing, crawling, and climbing ropes, ladders or scaffolds; must avoid exposure to weather, extreme heat or cold, wetness, humidity, vibration, or hazards such as heights or machinery; is limited to simple, routine, repetitive tasks and simple work-related decisions; is limited to infrequent changes in work setting defined as no more than one per day; is limited to occasional interaction with co-workers, supervisors and the public; and the need for time off task could be accommodated by the normal morning, lunch and afternoon breaks." (R. 16).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[4] for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ improperly weighed the medical evidence; (2) the ALJ failed to consider all of plaintiff's impairments in combination in assessing plaintiff's residual functional capacity; and, (3) the ALJ improperly equated plaintiff's ability to perform activities of daily living with the ability to work. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence as to her mental impairments.[5] Specifically, plaintiff contends that the ALJ erroneously rejected opinions from her treating psychiatrist, Dr. Saruesh Rajan, and a consultative examiner, Dr. Daniel Palmer, and instead impermissibly accepted the opinion of the state agency reviewing psychiatrist, Dr. Anthony Galdieri. The court finds no error in the ALJ's evaluation of this evidence.

---

[4] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

[5] Plaintiff does not contest the ALJ's evaluation of the medical evidence as it relates to her physical impairments.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p.

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ specifically addressed the reports of both Dr. Rajan and Dr. Palmer and adequately explained why she rejected their assessments. (R. 21). In particular, the ALJ discussed Dr. Rajan's assessment that plaintiff had "marked" and "moderate" limitations in several work-related functional areas (R. 1192-1198) and that he assessed a GAF score[6] of 40 (R. 1094-1100), and further acknowledged Dr. Palmer's report that also found plaintiff to have "marked" to "moderate"

---

[6] The Global Assessment of Functioning ("GAF") score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §§404.1527(c) and 416.927(c). A GAF rating of 31-40 indicates "major" impairment in social and occupational functioning.

limitations in her ability to perform some work-related activities (R. 1009-1014), but concluded that those opinions "are inconsistent with the clinical and objective findings as well as the claimant's self-reported activities of daily living." (R. 21). In addition, the ALJ noted that Dr. Palmer's assessment was an overestimate of plaintiff's functional restrictions and was not consistent with the totality of the evidence. (Id.).

The evidence of record as outlined by the ALJ in her thorough opinion supports her evaluation of the reports of Dr. Rajan and Dr. Palmer. (R. 14-16; 19-22). As the ALJ noted, plaintiff "has never been psychiatrically hospitalized, never attended or been referred to a partial hospitalization program, and has never resided in a halfway house or in another highly supportive living arrangement." (R. 21). Instead, plaintiff's mental health issues have been addressed through medication and counseling, which, according to Dr. Rajan's own records resulted in improvement in her mental health conditions. (R. 1097). Accordingly, the ALJ concluded that plaintiff's treatment history is inconsistent with the debilitating limitations suggested by Dr. Rajan and Dr. Palmer. (Id.)

Furthermore, the ALJ did not err in giving more credence to the opinion of Dr. Galdieri, the state agency reviewing physician, who opined that plaintiff would be able to perform simple, routine work tasks on a sustained basis. (R. 1177-1186). Pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(e)(2)(ii) and 416.927(e)(2)(ii); SSR 96-6p. The ALJ did so here and, having concluded that Dr. Galdieri's report was more consistent with the totality of the

evidence than those of Dr. Rajan and Dr. Palmer, he properly gave Dr. Galdieri's opinion greater weight.[7] (R. 22).

In sum, the ALJ did a thorough job in her decision in setting forth the relevant medical evidence and explaining why she rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's second argument is that the ALJ's residual functional capacity finding is "incomplete" because it fails to account for all of plaintiff's severe impairments. Specifically, plaintiff argues that in addition to the numerous severe impairments found by the ALJ, the record also includes diagnoses of fibromyalgia, acromioclavicular joint arthrosis, cervical strain with tension headaches, dysfunctional uterine bleeding, urinary incontinence with irritable bladder, restrictive lung disease and neuralgia of both feet, and that the ALJ's residual functional capacity finding was incomplete because it did not account for additional limitations caused by these other impairments. The court finds no merit to plaintiff's argument.

Although it is true that at one time or another plaintiff has been diagnosed with a large number of ailments, it is well settled that disability is not determined merely by the presence of an impairment, but by the effect that impairment has upon the individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Here, plaintiff has failed to show that any of the impairments that she contends the ALJ failed to address have

---

[7] The fact that Dr. Galdieri reviewed the file prior to Dr. Rajan's submission of a supplemental residual functional capacity statement does not render the ALJ's reliance on Dr. Galdieri's report unreasonable, as the ALJ reviewed Dr. Rajan's report and found it to be inconsistent with the totality of the evidence. See, e.g., O'Donnell v. Com'r of Social Security, 113 Fed. Appx. 475 (3d Cir. 2004)(ALJ could rely on opinion of non-examining state agency reviewing physicians who did not have access to a report as long as the ALJ considered it, along with the other evidence of record in assessing claimant's residual functional capacity.)

- 7 -

even a *de minimus* effect on plaintiff's ability to perform basic work activities at step 2 of the sequential evaluation process,[8] or any limitations beyond those found in the ALJ's residual functional capacity finding at step 5.[9]

The only additional specific limitation that plaintiff argues the ALJ failed to incorporate into the residual functional capacity finding is that plaintiff suffers from urinary problems that require frequent bathroom breaks that would compromise her ability to perform full-time work activity. However, as the Commissioner aptly notes, there is a dearth of evidence in the record that would support plaintiff's allegations in this regard. Plaintiff did not list urinary problems in her application for disability and there is little medical evidence in the record referring to any issues of this nature. On April 27, 2010, plaintiff's primary care physician noted that plaintiff complained of "urinary leakage at times" but she did not make any further complaints on any subsequent visit. (R. 968-71). Although a physician's assistant noted a history of urinary incontinence on two occasions, plaintiff declined treatment for such a condition. (R. 1110, 1117). In fact, the record

---

[8] At step two, the ALJ must determine whether a claimant's impairments are severe as defined by the Act. 20 C.F.R. §§404.1520 and 416.920. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(c) and 416.920(c). The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. The claimant bears the burden at step 2 of establishing that an impairment is severe. See, McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3rd Cir. 2004). Here, plaintiff relies solely on the diagnosis of the aforementioned impairments. Moreover, it also is important to note that the ALJ did not deny plaintiff's claim at step 2. Instead, she considered the impact of all of plaintiff's medically determinable impairments, severe and not severe, on plaintiff's residual functional capacity and found plaintiff not disabled at step 5. *Cf.*, McCrea v. Commissioner of Social Security, 370 F.3d at 360-61 (the Commissioner's determination to deny a claim at step 2 "should be reviewed with close scrutiny" because step 2 "is to be rarely utilized as a basis for the denial of benefits")

[9] At step 5, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(g) and 416.920(g). Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §§404.1545(a) and 416.945(a); SSR 96-8p.

demonstrates that only on one occasion in December of 2011 did plaintiff seek treatment for "occasional urinary incontinence with exercising or cough" due to a urinary tract infection, but even then she did not complain of extreme urinary frequency. (R. 1188). Because there is no evidence to support a limitation requiring frequent restroom breaks due to urinary incontinence, the ALJ did not err in not including such a limitation in the residual functional capacity finding.

The ALJ in this case found that plaintiff retains the residual functional capacity to perform sedentary work with a number of restrictions accommodating the limitations arising from her physical and mental impairments. (R. 120). It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that she incorporated into her finding all of the limitations that reasonably could be supported by the medical and other relevant evidence. (R. 120-124). Accordingly, the court is satisfied that the ALJ took into consideration the cumulative effect of all of plaintiff's impairments in determining that plaintiff is not disabled.

Plaintiff's final argument is that in assessing plaintiff's credibility the ALJ improperly equated her ability to perform activities of daily living with the ability to work. This argument also is without merit. As required under the regulations, the ALJ in this case properly considered plaintiff's subjective complaints in light of the medical evidence and all of the other evidence of record, including plaintiff's daily activities (20 C.F.R. §§404.1529(c) and 416.929(c); *see also* SSR 96-7p) and did a thorough job in her decision explaining why plaintiff's statements concerning "her impairments and their impact on her ability to perform work activities are not fully credible and consistent with her activities of daily living, her medical history, her medication regime, her work and earnings history, and the other evidence of record." (R. 16-22).

Moreover, while it is true, as plaintiff now asserts, that sporadic and transitory activities of daily living cannot be used to show an ability to engage in substantial gainful activity, *see* Fargnoli, 247 F.3d at 40, n.5, the ALJ did not do so here. Instead,, the ALJ properly considered plaintiff's allegations in light of not only her activities of daily living but also in light of the medical evidence, which revealed the absence of clinical and objective findings supporting plaintiff's allegations of totally debilitating symptoms, as well as the other factors discussed in the ALJ's decision.

It also is important to emphasize that the ALJ did not find plaintiff's subjective complaints entirely not credible. Rather, the decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from her impairments are supported by the medical and other evidence, the ALJ accommodated those limitations in the residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and is satisfied that it is.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Susan Paczak, Esq.
Abes Baumann
810 Penn Avenue
Fifth Floor
Pittsburgh, PA 15222-3614

Stephanie L. Haines
Assistant U.S. Attorney
200 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901

AO 72
(Rev. 8/82)